## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARLENE M. LUZIER,** | : | **No. 3:06cv1590** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF LABOR AND INDUSTRY,** | : | |
| **JOHN C. VOGEL, and** | : | |
| **BILLY G. LANHAM,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is defendants' motion for summary judgment in this sex discrimination in employment case. Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

Marlene M. Luzier began working for the Pennsylvania Department of Labor and Industry ("Department") in 1989. (Defendant's Statement of Material Facts as to Which There is No Genuine Issue to Be Tried (Doc. 49) at ¶ 1).[1] She started her career as an Intermittent Intake Interviewer. (Id.). The Department promoted her to Employment Specialist II in 1995. (Id.). Plaintiff again was promoted in January 2001, this time following an interview with Billy Lanham and Butch Lindke. (Id. at ¶

---

[1]Plaintiff filed an answer to this statement. We will cite the defendants' statement when the parties do not dispute a fact. Where there is a dispute, we will note that.

2).  After this promotion, plaintiff became an Employment Security Specialist II in the

Department's Bureau of Workforce Development Special Programs Division.  (Id.).

Lanham has worked for the Department for sixteen years and currently serves as the

Division Chief of the Special Programs Division.  (Id. at ¶ 3).  He supervised both

plaintiff and Lindke in that position.  (Id.).  Lindke was plaintiff's supervisor in the

Special Programs Division.  (Id. at 4).

Plaintiff points to several incidents of alleged discriminatory behavior.  When

Linda Trimpey was appointed to a director position in the Department in 2001, for

instance, plaintiff overheard Defendant Lanham say that Trimpey must have had

political pull because "we need a man in there with some balls, we don't need a

female."  (Id. at ¶ 5).  Plaintiff contends that Lanham harassed her in 2002, when he

assigned her work during a meeting that had originally been assigned to Lindke and

a coworker.  (Id. at ¶ 6).  Defendant Lanham apparently assigned her the work

because she had completed her assignment correctly and Lindke and the male co-

worker had not.  (Id.).  Lanham likewise assigned plaintiff the task of scoring grant

proposals because he "wanted them done right."[2]  (Id. at ¶ 7).  He also allowed a

male worker to move his filing cabinet out of his cubicle but refused plaintiff the same

privilege.  (Id. at ¶ 9).  Later, Lanham criticized plaintiff about a letter he thought she

---

[2]Plaintiff complained to the Equal Opportunity office at the Department to complain
of this incident.  (Defendant's Statement at ¶ 8).  She spoke with Al Torres in that office,
who explained the complaint procedure to her and asked her to file a written complaint.
(Id.).  Plaintiff did not file that complaint, and the Department could not conduct an
investigation.  (Id.).

had written and demanded she make changes to it.  (Id. at ¶ 13).  When Lindke

informed Lanham that he had actually written the letter, Lanham's criticism stopped.

(Id.).

Lanham also made comments that plaintiff and others found offensive towards

women.  In summer 2003, plaintiff and a coworker had a conversation about a co-

worker who had become pregnant.  (Id. at ¶ 10).  When Laham heard of this

worker's condition, he commented that women should be "'home, pregnant and

barefoot.'" (Id.).   Similarly, some time before Veteran's Day 2003, Luzier overheard

Lanham and Butch Lindke discussing a celebration planned by their division within

the Department.  (Id. at ¶ 14).  Luzier questioned Lanham about whether she had

any say in the planned celebration.  (Id.).  Lanham denied that her input was

necessary since plaintiff was "just a woman" and not a veteran.  (Id. at ¶ 14;

Plaintiff's Statement at ¶ 14).  The parties dispute whether plaintiff ever complained

to her supervisors about these 2003 comments.  (Defendants' Statement at ¶ 11;

Plaintiff's Statement at ¶ 11).  In October 2004, Lanham told plaintiff that he had a

male dog, since he had one woman at home (his wife), and that was enough.

(Defendants' at ¶ 15).

Other evidence indicates that Lanham had an unfavorable attitude towards

women in the workplace.  Plaintiff testified that one male co-worker, for example,

overheard Lanham criticize her.  (Plaintiff's Statement at ¶ 60).  This co-worker

informed plaintiff that laws existed to protect her from such harassment.  (Id.).

3

Lanham supervised Elwin Lindke for six years.  (Id. at ¶ 54).  Lindke provided an

affidavit in which he contended that Lanham "had a 'real chip on his shoulder' about

women in the workplace."  (Id. at ¶ 55).  Lindke frequently heard Lanham make

comments like women should "be at home, barefoot and pregnant."  (Id. at ¶ 55).

Lanham also told Lindke that a women made Sergeant Major in the Army because of

affirmative action, not because of her skills.  (Id. at ¶ 63).  Lindke was unaware of

Defendant Lanham ever promoting any women in his department to management

positions.  (Id. at ¶ 55; Affidavit of Elwin Lindke, Exh. J to Plaintiff's Brief in

Opposition to Defendants' Motion for Summary Judgment  (Doc. 52) (hereinafter

"Lindke Affidavit") at ¶ 6).  Over the six years that Lanham supervised him, Lindke

reported that he had perhaps a dozen conversations in which he expressed concern

over Lanham's "discriminatory treatment of women."  (Plaintiff's Statement at ¶ 56).

At times, Lanham responded to such statements by admitting that he had crossed a

line; at other times, he told Lindke to "mind [his] own business."  (Id.; Lindke Affidavit

at ¶ 10).  Lanham likewise testified that he had never recommended a woman to a

supervisory position, though he did recommend that a former secretary be

considered for positions of more responsibility.  (Plaintiff's Statement at ¶ 58).

On December 31, 2004, Lindke retired from his position as an Employment

Security Specialist III (hereinafter "ESS3").  (Id. at ¶ 16).  Plaintiff was one of six

people who applied to replace him.  (Id. at ¶ 17).  Defendant Lanham, James

Rabenold, the Department's deputy director, and Gina Frye, an administrative officer

who handled all personnel actions in the Bureau of Workforce Development, interviewed plaintiff on March 3, 2005.  (Id. at ¶¶ 18, 23-24).  Defendant John Vogel was in the room but not a member of the panel.  (Id.).  At that time, Vogel was Director of the Bureau of Workplace Development and Partnership of the Department.  (Id. at ¶ 19).  He oversaw approximately 600 employees.  (Id.).  The parties disagree if Vogel was present at any of the other interviews.  (Id. at ¶ 20).  Vogel and Frye contend that he attended all but one of the interviews.  (Id.).  Rabenold testified at his deposition that he could not remember Vogel's presence at any other interview, but specifically recalled that he attended plaintiff's.  (Plaintiff's Statement at ¶ 20).  In any case, both sides agree that Vogel testified that he had little involvement in the panel's discussion of the candidates.  (Id. at ¶ 21; Defendants' Statement at ¶ 21).  During the interview, Vogel made various noises and shuffled papers while plaintiff tried to speak.  (Defendants' Statement at ¶ 22).  Plaintiff became so flustered during the interview that she asked for a halt to the proceedings.  (Plaintiff's Statement at ¶ 22).

Defendants Lanham and Vogel testified that plaintiff was critical about former supervisors during the interview.  (Defendants' Statement at ¶ 27).  They also testified that plaintiff did not answer some of the questions she was asked about her unit.  (Id. at ¶ 28).  The interview rating sheets included in the record do not reflect that plaintiff failed to answer questions, though interviewers did note that some of her answers were rather brief.  (See Ex. G to Plaintiff's Brief in Opposition to

5

Defendants' Motion for Summary Judgment (Doc. 52)).  Rabenold testified that an interviewee's ratings would be lower if she failed to answer questions.  (Defendants' Statement at ¶ 29).

After the interview, James Rabenold rated plaintiff as "somewhat deficient" and J.P., the candidate who got the job, as "outstanding."  (Id. at ¶ 30).  Gina Frye likewise found plaintiff "somewhat deficient" and J.P "outstanding."  (Id. at ¶ 31). Defendants cite as one factor for J.P.'s superior performance the fact that he brought handouts with information about his work and plans to the interview, while plaintiff provided interviewers with no such material.  (Id. at ¶ 32).  Rabenold and Frye discussed these handouts as they evaluated the candidates.  (Plaintiff's Statement at ¶ 74).  They interviewers testified that they were "impressed" with this material. (Defendants' Statement at ¶ 33).  These documents were, however, co-authored with plaintiff and Lindke.  (Plaintiff's Statement at ¶ 72).  Lanham was aware of this fact, but did not inform the other members of the panel because he feared that "'that may have prejudiced their opinion.'"  (Id. at ¶¶ 72, 76).

The parties agree that J.P. was qualified for the position.  (Id. at ¶ 34).  The panel ultimately recommended J.P. for the position, choosing him over plaintiff.  (Id. at ¶ 35).  Denham noted that while plaintiff had not given the best interview, she represented the department's second choice.  (Id. at ¶ 36).  Lanham found J.P. "slightly more capable" than plaintiff.  (Id. at ¶ 37; plaintiff's statement at ¶ 37). Luzier contends that the position had been promised to J.P. before the interview

6

process even began.  (Id. at ¶ 38).  After hearing rumors that J.P. would receive the

job, plaintiff confronted both Lanham and J.P. about the situation.  (Id. at ¶ 39).

Lanham did not answer directly plaintiff's question about the pre-selection of J.P.,

but instead told her that all the applicants would have to go through the interview

process.  (Id.; Plaintiff's Statement at ¶ 39).

After defendants denied plaintiff the promotion she began crying frequently,

stopped trusting people, felt nervous and began to experience horrible dreams.

(Defendants' Statement at ¶ 44).  On September 23, 2005, plaintiff went to see a

physician, Dr. Mueller.  (Id. at ¶ 47).  Dr. Mueller diagnosed plaintiff with depression,

and plaintiff was unable to return to work.  (Id.).  Plaintiff had not visited a doctor in

the ten years previous to her visit with Dr. Mueller.  (Id. at ¶ 48).

Defendants claim that the interview process was the primary decision-making

tool in the hiring process at the Department.  (Defendants' Statement at ¶ 26).

Plaintiff admits that defendants claim that interviews were the determining factor in

the hiring process, but disputes claims that defendants relied on these interviews in

making the decision about the position for which she applied.  (Id. at ¶ 26, Plaintiff's

Statement at ¶ 26).  Plaintiff contends that coworkers were convinced that J.P. would

receive the job even before the interviews began, and called her to inquire about

how she would enjoy working for him.  (Id.).  She also points to the affidavit of

Audrey Bergstresser, who worked in the cubicle next to J.P.'s.  (Id.).  Bergstresser

reported that she had overheard J.P. discussing a possible move to another state-

government department.  (Id.).  He had been offered a position in the department,

but had to decide whether to take the position or accept a promotion to Lindke's

position which he had been offered.  (Id.).  This conversation allegedly occurred

before the interviews took place.  (Id.).

Plaintiff contends that she was qualified for the position.  (Defendants'

Statement at ¶ 40).  She had worked in the class immediately below the position for

which she applied for at least two years, and her responsibilities in that position had

largely duplicated those of the ESS3 since January 2005.  (Id.).  Still, plaintiff had

never been classified as an ESS3 and had never received pay commensurate with

that grade.  (Id.  at ¶ 41).  Plaintiff blames Defendant Lanham's discriminatory

attitude towards women for her failure to receive a promotion to ESS3; he had never

promoted a woman to a position directly under him.  (Id. at ¶ 42).  At the time plaintiff

alleges Lanham's discrimination occurred, he supervised eight female employees:

one clerk typist 3, two clerk typists 2, and three Employment Security Specialists 2,

the position held by the plaintiff.  (Id. at ¶ 43).[3]   Lanham had two opportunities to

make hires for supervisory positions.  (Id.).  No women applied for the first

opportunity, and J.P. received the second.  (Id.).  Lanham hired none of the other

supervisors who worked under him.  (Id.).

Plaintiff made another verbal complaint to the Department's Equal Opportunity

---

[3]Defendants contend that Lanham supervised ten women, but the positions cited by
defendants as supervised by Lanham add up to eight, rather than ten positions.  (See
Defendants' Statement at ¶ 43).  Neither party has addressed this discrepancy.

Office in September 2005.  (Id. at ¶ 45).  She protested the fact that Lanham had assigned her to perform audits.  (Id.).  She thought the process would take two months but lasted over a year.  (Id.).  The day after she filed her complaint, Jim Paisley told plaintiff that she would not have to complete any more audits.  (Id. at ¶ 46).

Plaintiff filed a *pro se* complaint with the Pennsylvania Human Rights Commission (PHRC) on September 14, 2005.  (Defendants' Statement at ¶ 49; Plaintiff's statement at ¶ 49).  Plaintiff's last day at work for the Department was September 23, 2005.  (Plaintiff's Statement at ¶ 49).  On December 9, 2005, plaintiff filed an amended complaint with the PHRC.  (Defendants' Statement at ¶ 50).  That complaint raised four counts: sex discrimination through failure to promote (Court I); retaliation discrimination by failure to promote (Count II); retaliation discrimination by harassment (Count III); and disability discrimination by harassment (Count IV).  (Id.).  Counts III and IV of the complaint alleged that the discrimination that plaintiff faced was related to a "mental disorder" from which the plaintiff suffered.  (Id. at ¶ 51).  The amended complaint also alleges that plaintiff faced a hostile work environment as retaliation for complaining to the Department's Equal Employment Opportunity office and for plaintiff's civil service appeal.  (Id. at ¶ 52).  Plaintiff used annual leave, sick leave, and family medical leave until she retired from the Department on July 11, 2006.  (Id. at ¶ 53).  According to the plaintiff, she retired due to harassment by John Vogel and Billy Lanham.  (Id.).

9

The plaintiff also filed her amended complaint with the Equal Employment Opportunity Commission (EEOC).  The EEOC examined this complaint and issued plaintiff a "right to sue" letter on September 26, 2006.  In the meantime, plaintiff filed a *pro se* complaint in this court on August 16, 2006 (Doc. 1).  Judge Christopher C. Connor originally heard the case.  After several months of preliminary precedings and the entry of an appearance of counsel for the plaintiffs, Judge Connor on May 3, 2007 recused himself from the matter (See Doc. 27).  The case was transferred to the present judge.  We granted plaintiff's motion to file an amended complaint on July 3, 2007 (Doc. 35).

Plaintiff's amended complaint raises causes of action[4] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1983 and the Pennsylvania Human Relations Act (PHRA), 43 PENN. STAT. ANN. §§ 951-963. Plaintiff's complaint sets forth claims for violation of plaintiff's right to equal protection of the laws under the Fourteenth Amendment and alleges violations of the other statutes as well.  The complaint seeks both compensatory and punitive damages.

The parties then conducted discovery.  At the close of discovery, defendants filed the instant motion.  The parties briefed the issues and the court held oral

---

[4]Federal Rule of Civil Procedure 8(a)(2-3) establishes that a complaint must contain "(2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." FED. R. CIV. P. 8(a)(2-3). Experience has taught this court that the aim of that rule is best achieved when a plaintiff sets out separate causes of action and their basis, naming each cause of action a "count." Plaintiff did not do so here, and we would urge plaintiff in the future to state specific causes of action, as that practice makes it possible to dispose of motions like the instant one more efficiently.

argument, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. §§ 1983 and 2000e for constitutional and statutory violations we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

11

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Defendants raise several grounds for granting their motion for summary judgment.  We will address each in turn.  As a preliminary matter, we note that we apply the same legal standards to claims brought under the Pennsylvania Human Relations Act as we do to claims brought under federal anti-discrimination laws that address the same subject matter. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (finding that "[w]hile the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA [citations omitted], its courts nevertheless generally interpret the PHRA in accord with its federal counterparts.").

## A. Failure to Exhaust Administrative Remedies

Defendants argue that they are entitled to summary judgment on plaintiff's hostile work environment sexual harassment claims because plaintiff did not exhaust her administrative remedies on those claims. Defendants point out that plaintiff's complaint to the Pennsylvania Human Rights Commission did not refer to sexual harassment as the source of the hostile work environment of which she complained, but to disability discrimination. They also allege that certain of plaintiff's complaints are time-barred.

A party must exhaust her administrative remedies before bringing suit under Title VII and the PHRA. Spence v. Straw, 54 F.3d 196, 200 (3d Cir. 1995); Burgh v. Borough Council of Montrose, 251 F.3d 465, 469-71 (3d Cir. 2001) (describing the exhaustion requirements under both statutes). Once an employee brings suit, "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Atkinson v. Lafayette College, 460 F.3d 447, 453 (3d Cir. 2006) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). The parties do not dispute that plaintiff filed an administrative claim and that the claim was exhausted. Instead, they dispute whether her administrative claim included sufficient allegations of sexual harassment for the court to find such claims administratively exhausted. "The relevant test in determining whether [a party] was

13

required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." <u>Waiters v. Parson</u>, 729 F.2d 233, 237 (3d Cir. 1984).

The question here is thus whether plaintiff's claims of a sexually hostile work environment were fairly within the scope of the complaints she filed with the Pennsylvania Human Relations Commission, which were dual-filed with the Equal Employment Opportunity Commission.  Plaintiff filed two such complaints. The first complaint, filed September 14, 2005, alleged that she had experienced discrimination when defendants failed to promote her because of her sex. (<u>See</u> Exh. H to Plaintiff's Statement of Facts).  The complaint also alleges that after plaintiff complained of this discrimination, Defendant Lanham discriminated against her by assigning her work not given to men who held similar positions.  (<u>Id.</u>).  Plaintiff's complaint alleged that "Mr. Lanham takes care of the Sex-Male employees and discriminates against females.  Mr. Lanham does not have any Sex-Females in supervisory positions."  (<u>Id.</u>).  In a narrative attached to her complaint, plaintiff contended that "Someone needs to put a stop to the discrimination, intimidation's [sic], and unfairness of management.  I have been put through mental anguish, stress, intimidation, harassment, discrimination, and I hope this can be stopped." (<u>Id.</u>).

Plaintiff filed her amended complaint on December 12, 2005.  (<u>See</u> Exh. I).

14

She reasserted her claims of sex discrimination based on a failure to promote.  (Id.).

Plaintiff also added a harassment claim to her complaint.  She pointed out that she

had complained in November 2002 about discrimination by Defendant Lanham

because of her sex.  (Id. at ¶ 32).  From March 2005 to October 2005, defendants

had "harassed and retaliated against me."  (Id. at ¶ 34).  This harassment came

when defendants "discussed that [plaintiff] was on extended medical leave due to

'mental disorder.'"  Plaintiff also contended that defendants "created a hostile work

environment."  (Id. at ¶ 36).   The amended complaint also included a claim that

plaintiff had been discriminated against and harassed because her employer

considered her to suffer from a disability.

       The court finds that the discrimination charges brought in plaintiff's lawsuit are

fairly within the scope of her administrative complaint or the investigation arising

therefrom.  In her *pro se* complaint, plaintiff alleged that she had been discriminated

against because of her gender.  She made no allegations about disability-related

discrimination, yet claimed that she had been the victim of not only retaliation and

discrimination, but harassment.  A reasonable investigation arising from these

charges would have considered claims of sexual harassment, retaliation and

discrimination by failure-to-promote.  Plaintiff's amended claim reaffirmed her earlier

complaints, adding charges of disability discrimination.  She did not disavow her

earlier claims.  This case is not like Antol v. Perry, where the court found that

plaintiff's gender discrimination claims were not fairly within the scope of his EEOC

claim.  Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).  In Antol, plaintiff's EEOC

complaint had focused on discrimination because of his seizure disorder, a physical

disability.  Id.  Here, plaintiff's PHRC complaint alleged gender discrimination that

included harassment because of her gender.  She later amended that charge to

include another kind of harassment, but since gender discrimination and harassment

were the subject of her original complaint, they were fairly within the scope of the

EEOC investigation that would arise from the complaint.  The court will deny the

motion on this point.

     Defendants also contend that plaintiff's claims outside of defendants' failure to

promote her are time barred.  These claims, defendants insist, arise from discrete

instances and thus are not permissible unless they fall within the 300-day reporting

period mandated by Title VII. The Supreme Court has concluded that "a Title VII

plaintiff raising claims of discrete discriminatory or retaliatory acts must file his

charge within the appropriate time period–180 or 300 days–set forth in 42 U.S.C. §

2000e-5(e)(1).  A charge alleging a hostile work environment claim, however, will not

be time barred so long as all acts which constitute the claim are part of the same

unlawful employment practice and at least one act falls within the time period."

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

     The court finds that plaintiff can make use of the continuing violations doctrine

because her claims of a hostile work environment include her supervisor's alleged

continuing animus towards women, which extended over several years.  To the

16

extent that such behavior could be seen to constitute sexual harassment, the incidents were part of a pattern that makes up the same unlawful employment practice.  At least one such act occurred in a period not time-barred, and therefore plaintiff may take advantage of the continuing violation doctrine to rescue her claim.

### B.  Failure to Provide Evidence for Sex Discrimination

Defendants allege that plaintiff has not presented evidence by which a jury could conclude that she suffered sex discrimination when defendants decided not to promote her.  No direct evidence indicates that defendants based their decision on plaintiff's sex.  Still, courts have established a burden-shifting scheme for claims of sex discrimination under Title VII when no direct evidence of such discrimination exists: "the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 408 (3d Cir. 1999) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792,802 (1973)).  If the defendant meets that burden, the burden shifts back to the plaintiff, who must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination."  Id.

The parties agree that plaintiff has made out a prima facie case of sex discrimination.  A plaintiff seeking to establish a prima facie case under Title VII "must show (1) that she is a member of a protected class, (2) she was qualified for

the position, (3) she was discharged [or not promoted], and (4) the position was ultimately filled by a person not of the protected class." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066 (3d Cir. 1996). Plaintiff has presented evidence that she is a woman, and thus a member of a protected class. She was qualified for the position and allowed to interview for it. Plaintiff failed to receive the promotion she sought. The person who received that promotion was a man, and therefore not in the protected class. Plaintiff has therefore made out her prima facie case.

The burden now shifts to the defendant to show that the Department denied plaintiff's promotion for a "'legitimate, non-discriminatory reason.'" Jones, 198 F.3d at 408.   In order to meet its burden in a sex discrimination case, an employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Pierske, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original). Here, defendants have produced evidence that they decided to hire J.P. because he outperformed plaintiff in interviews and thus better fit the criteria of the position. Taken as true, the defendants have provided evidence of a legitimate, non-discriminatory reason for their hiring decision.

Since defendants have met their burden of providing legitimate non-

18

discriminatory reasons for the employment decision, the burden now shifts back to the plaintiff to show that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.   Plaintiff must therefore "[produce] sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067 (3d Cir. 1996).  A plaintiff must do more, however, than simply demonstrate that the employer did not make the correct hiring decision: "to discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 328 (3d Cir. 1995).

Here, plaintiff has provided evidence by which a jury could disbelieve the defendants' stated reasons for refusing her the promotion.  While defendants contend that plaintiff's performance in the job interview was inferior and that these failings led decision-makers to hire another candidate, plaintiff has presented evidence that the decision to hire J.P. had been made before the interviews even took place.  If the interviews were a farce, then defendants' claim to reliance on such interviews for their hiring decision is not believable.  Further, defendants claimed that

19

materials presented by J.P. at his interview played an important role in deciding to

offer him the promotion.  At least one of the interviewers, however, knew that plaintiff

had participated in the creation of those documents.  When presented with such

evidence, a juror could conclude that the interviews were not a serious endeavor,

and that defendants' claim to have relied on them is not true.  Accordingly, plaintiff

has presented evidence by which a jury could conclude that the stated reasons for

defendants' decision were not the real reasons, and find for the plaintiff.  We will

deny the motion for summary judgment on this point.

## C. Hostile Work Environment Claims

Defendants contend that they should be granted summary judgment on

plaintiff's hostile work environment sexual harassment claims.  While a tense and

unhappy work environment existed between plaintiff and her male supervisors,

actual instances of gender-based hostility from supervisors were rare.  Defendants

contend that no reasonable juror could conclude that the gender-based activity was

so pervasive and intolerable as to cause plaintiff to feel compelled to leave her job.

Title VII of the Civil Rights Act of 1964 prohibits sexual harassment in the form

of a "hostile work environment," which "occurs when unwelcome sexual conduct

unreasonably interferes with a person's performance or creates an intimidating,

hostile, or offensive working environment." Weston v. Commonwealth of

Pennsylvania, 251 F.3d 420, 425-426 (3d Cir. 2001).  A hostile work environment

sexual harassment claim requires a showing that "(1) the employee suffered

20

intentional discrimination because of his or her sex; (2) the discrimination was

pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4)

the discrimination would detrimentally affect a reasonable person of the same sex in

that position; and (5) respondeat superior liability existed." Knabe v. Boury Corp.,

114 F.3d 407, 410 (3d Cir. 1997).   Determining whether a work environment is

"'hostile' or 'abusive'" requires "looking at all the circumstances," including "the

frequency of the conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17,

23 (1993).  To be actionable, the conduct "must be both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that

the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S.

775, 787 (1998).  The conduct in question must be more than "'the ordinary

tribulations of the workplace, such as the sporadic use of abusive language, gender-

related jokes, and occasional teasing.'" Id. at 788.  It must be so "extreme to amount

to a change in the terms and conditions of employment." Id.

The court will examine each of the elements of this standard.

### i.  Intentional Discrimination Based on Gender

Plaintiff points to several instances where she contends that defendants

subjected her to intentional discrimination based on her gender.  She points out that

her work was judged differently from that of men by her superiors, that men received

preferential office assignments to hers, though she had greater seniority, that her

opinions were dismissed by superiors on the basis of her gender, and that she was

not fairly compensated for performing extra work.  Evidence also indicates that

Defendant Lanham made other sexist and anti-woman comments.  The court finds

that a jury could conclude from such evidence that defendants based their disparate

treatment of plaintiff on her gender.  The first prong of the hostile environment test is

satisfied by such evidence.  See Abramson v. William Patterson College, 260 F.3d

265, 279 (3d Cir. 2001) (finding that this test "merely requires a showing that the

offender's behavior was . . . based on a protected category."); Spain v. Gallegos, 26

F.3d 439, 448 (3d Cir. 1994) (finding the first elements of this test satisfied when she

was subject to rumors about a sexual affair with a male superior because people

often view women in that situation different from men and plaintiff may have

"suffered the effects she alleges because she was a woman.").

### ii.  Pervasive and Regular Discrimination

The Third Circuit Court of Appeals has concluded that this test, in conjunction

with the fourth test, reflects courts' requirement that the work environment was

"objectively hostile." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006).  The Third

Circuit has combined the two prongs of the test, concluding that they "coalesce into

a single inquiry: did the plaintiff suffer . . . harassment severe or pervasive enough to

'alter the conditions of [her] employment and create an abusive working

environment?'" Id.  The court notes that the conduct complained of must be stark:

22

"[o]ccasional insults, teasing, or episodic instances of ridicule are not enough." Id. A

court must weigh "'the frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive utterance; and whether

it unreasonably interferes with an employee's work performance.'" Id.

The court finds that a jury could conclude from the evidence advanced by the

plaintiff that defendants' discriminatory conduct was "severe or pervasive" enough to

alter the conditions of plaintiff's employment and create an abusive working

relationship.  While the sexual harassment complained of by plaintiff was not

necessarily the type of vulgar and crude sexual language and innuendo frequently

found in such cases, plaintiff nevertheless points to a regular series of statements

and actions by her supervisors that a jury could conclude indicates an animus

towards her as a woman that prevented her enjoying the same opportunities as male

employees.[5]  A jury could find the defendants' remarks as indicative of a pervasive

hostility aimed at preventing a woman from succeeding at work, not simply

occasionally inappropriate statements not worthy of a federal lawsuit. See, e.g.,

Onacle v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998) (finding that

"[w]e have never held that workplace harassment, even harassment between men

---

[5]The court notes that the Third Circuit has recently emphasized that conduct can be
actionable if it is either severe or pervasive, and that a plaintiff need not prove the conduct
was both in order to prevail. See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 20006)
(noting that "[w]e have often stated that discriminatory harassment must be 'pervasive and
regular.'  But the Supreme Court's standard is 'severe or pervasive.'  The difference is
meaningful, and the Supreme Court's word controls, so we use the severe or pervasive
standard here.") (emphasis in original) (citations omitted).

23

and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.  'The Critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993)).

### iii.  Detrimental Effect on Plaintiff

Defendants contend that the alleged harassment did not cause any detrimental effect on the plaintiff.  Though plaintiff claims to have experienced emotional turmoil as a result of defendants' conduct, she did not feel the need to see a doctor until September 2005, years after the harassment supposedly began. Plaintiff need not, however, have undergone continuing psychological care in order to establish hostile environment harassment.  Indeed, the Supreme Court has found that "Title VII comes into play before the harassing conduct leads to a nervous breakdown.  A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."  Harris, 510 U.S. at 22.  Thus, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious."  Id.; see also, Spain 26 F.3d at 449 (finding a detrimental impact when plaintiff "perceived herself to be subject to an abusive environment as manifested through her co-workers' and

supervisors' interaction with her.  Thus, determination of the particular effect of the rumors on Spain is another question of fact for the jury.").  Here, plaintiff presents evidence that she suffered mental anguish as a result of her male supervisor's conduct.  A jury could conclude that the injury represents evidence of a subjective detrimental affect.  Plaintiff meets this part of the test.

### iv.  Conduct would have a detrimental affect on a Reasonable Person

The court likewise concludes that a jury could find that the conduct in question here would have a detrimental affect on a reasonable person.  The evidence indicates that a pervasive anti-woman environment existed in the workplace, with men given preferential treatment and women discouraged from having ideas or seeking advancement.  A reasonable person operating under those circumstances could conclude that making an effort to be more productive, develop new programs or new ideas or climb the administrative ladder to a position of greater authority would be discouraged from such activity if she were a woman.  The court finds that plaintiff has presented evidence which could survive summary judgment on this element as well.

### v.  Respondeat Superior Liability

The parties do not dispute that respondeat superior liability applies under these circumstances, and plaintiff has therefore satisfied this part of the hostile environment standard.

The court will deny this element of defendants' motion.  While a jury may

eventually find that the conduct complained of here was not so regular or pervasive as to justify relief, the court finds that the evidence in this case allows plaintiff to survive summary judgment on her hostile environment claim.

**D.  Claims Under Section 1983/PHRA**

Defendants argue that plaintiff cannot prevail on her claims pursuant to 42 U.S.C. § 1983 or the Pennsylvania Human Relations Act.  The Defendant Agency argues that it enjoys sovereign immunity from claims under those statutes. Defendants Vogel and Lanham contend that they cannot be sued in their official capacities and that no evidence indicates that defendants acted in any capacity other than an official one.  Plaintiff does not respond to these arguments, and the court could grant the motion as unopposed.  In any case, defendants are correct to argue that the Agency has the protection of sovereign immunity for such claims. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) (section 1983 against state or state agency barred); Williams v. Pennsylvania State Police, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000) (PHRA claims barred in federal court).  In addition, suit of an individual in his official capacity is the same as a suit against the agency, and dismissal of those claims is therefore proper.  See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991) (holding that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State.").

**Conclusion**

For the reasons stated above, the court will grant in part and deny in part

defendants' motion for summary judgment.  The court will deny the defendants' motion for summary judgment on plaintiff's Title VII discrimination and hostile environment claims, but grant the motion on plaintiff's claims pursuant to the Pennsylvania Human Relations Act and 42 U.S.C. § 1983.  As a result of this decision, all claims against the individual defendants will be dismissed.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARLENE M. LUZIER,** | : | **No. 3:06cv1590** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF LABOR AND INDUSTRY,** | : | |
| **JOHN C. VOGEL, and** | : | |
| **BILLY G. LANHAM,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 22nd day of August 2008, the defendants' motion for summary judgment (Doc. 43) is hereby **GRANTED** in part and **DENIED** in part, as follows:

1) The motion for summary judgment on plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, is hereby **DENIED**;

2) The motion for summary judgment on plaintiff's claims pursuant to 42 U.S.C. § 1983 is hereby **GRANTED**;

3) The motion for summary judgment on plaintiff's claims pursuant to the Pennsylvania Human Relations Act, 42 PENN. STAT. ANN. §§ 951-963, is hereby **GRANTED**;

28

4) Summary judgment is hereby **GRANTED** for all claims against Defendants

Vogel and Lanham, and

4) Defendants Vogel and Lanahm are hereby **DISMISSED** from the case, as

summary judgment on all claims against them in the complaint have been

granted.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**