**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARLENE M. LUZIER,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:06-CV-1590** |
| **v.** | : | |
| | : | **(Judge Munley)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF LABOR AND INDUSTRY,** | : | **Electronically Filed Document** |
| | : | |
| **Defendant.** | : | |

## DEFENDANT PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY'S PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.6, Defendant Pennsylvania Department of Labor and Industry, through their counsel, submits the following Pretrial Memorandum. The attorneys' conference was held on September 24, 2008.  Attorneys Giunta, Nachamkin and Strokoff were present.

## A.    FEDERAL COURT JURISDICTION

This action was brought under Title VII of the Civil Rights Act of 1964, as amended, and this Court has jurisdiction under 28 U.S.C. §§1331 and 1343.

**B.     SUMMARY STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY**

Plaintiff Marlene Luzier is a former employee of the defendant, Commonwealth of Pennsylvania Department of Labor and Industry (L&I).  Luzier claims that she was the victim of gender discrimination at L&I's Bureau of Workforce Development office by her supervisors.

Luzier alleges that over the course of several years, she was surrounded by an overt gender-based animus within the Bureau of Workforce Development Partnership.  In addition, she alleges that it was due to this gender animus that she was not given a promotion in March 2005 which she was interviewed for.  Instead, the position was given to a male employee.  Plaintiff alleges that the interview itself was a sham and that the male incumbent was promised the position months before.  In September 2005 Plaintiff left work and used annual leave, sick leave, and finally family medical leave until she retired effective July 11, 2006 stating that her retirement was due to harassment by her supervisor and the Director of the Bureau.

L&I contends that Luzier was not sexually harassed and, even if she was, she was not harassed in a legally cognizable sense.  If Luzier was the subject of any harassment, none of it was attributable to her gender.   In addition, L&I contends that Luzier voluntarily retired from her employment.  Furthermore, L&I

maintains that it had a readily accessible policy and means for reporting complaints to which plaintiff did not avail herself.  In sum, L&I maintains that it is not liable to Luzier.

### C.    STATEMENT OF UNDISPUTED FACTS

Counsel for the parties have agreed that the following facts are undisputed:

1.    Marlene M. Luzier ("Luzier") began employment with L&I in 1989 as an Intermittent Intake Interviewer and in 1995 she was promoted to Employment Specialist II.

2.    In January 2001, following an interview with Billy Lanham and Butch Lindke, Luzier received an Employment Security Specialist II position with L&I's, Bureau of Workforce Development, Special Programs Division; a lateral transfer.

3.    Billy G. Lanham has been employed by L&I for sixteen years and is the Division Chief of the Special Programs Division; in that capacity, Lanham supervised Butch Lindke and Luzier.

4.    Butch Lindke was formerly employed by L&I within the Special Programs Division and served as Luzier's immediate supervisor.

5.    In 2001, a female, Linda Trimpey was appointed to a director position within L&I.  Luzier states that she overheard Billy Lanham say that Trimpey must

have political pull because "we need a man in there with some balls, we don't need a female."

6.     Luzier states that in 2002, she was harassed by Billy Lanham, the division chief, during a meeting in Lanham's office.  Luzier states that she was given the work of a co-worker, Jim Paisley, and her immediate supervisor, Butch Lindke, to complete because she completed her own work right and they had completed theirs wrong.

7.     Lanham said he wanted Luzier to do the scoring of the grant proposals because hers were excellent and he wanted them done right.

8.     Luzier went to the Equal Opportunity office within L&I the following day and verbally complained to Al Torres.  Although Torres told her of the complaint procedure and asked her to file a written complaint in order to do an investigation, she did not file a formal written complaint.

9.     In the summer of 2003, Luzier had a conversation with a co-worker regarding the pregnancy of another co-worker.  Luzier states that Billy Lanham commented that women should be "home, pregnant, and barefoot."

10.     On December 31, 2004, Butch Lindke retired from his Employment Security Specialist III (ESS3) position.

11.    In March of 2005, Luzier and five other individuals applied for the ESS3 position.

12.    Luzier was interviewed on March 3, 2005 by Billy Lanham, James Rabenold, and Gina Frye; John Vogel was in the room but was not on the panel.

13.    During the relevant time, John Vogel was the Director of the Bureau of Workforce Development Partnership of L&I and oversaw approximately 600 employees.

14.    During the relevant time, James Rabenold was the Workforce Partnership Chief, or deputy director.

15.    During the relevant time, Gina Frye was an administrative officer who handled all personnel actions for the Bureau of Workforce Development and was responsible for interviewing candidates.

16.    During the relevant time period, James Rabenold and Gina Frye participated in all interviews in the Bureau of Workforce Development Partnership.

17.    James Rabenold rated Marlene Luzier as "somewhat deficient" and J.P., the selected candidate, as "outstanding" after the interviews.

18.    Gina Frye rated Luzier as "somewhat deficient" and J.P., the selected candidate, as "outstanding" after the interviews.

19.    J.P. presented handouts during his interview.  Luzier did not bring any handouts to her interview.

20.    At his interview, J.P. distributed documents to the interview panel that he claimed were his own work product.

21.    The documents submitted by J.P. were, in fact, co-authored with Ms. Luzier and Mr. Lindke.  Lanham knew that the documents were not J.P.'s individual work product, but did not tell the other panel members that the documents were not J.P.'s work.

22.    Mr. Rabenold and Ms. Frye did not know that the documents were co-authored with Ms. Luzier and Mr. Lindke; they believed the documents were J.P.'s own work.

23.    Ms. Frye and Mr. Rabenold discussed J.P.'s handouts during the decision phase of the selection process.

24.    According to Ms. Frye, the panel was impressed by "the fact that [J.P.] took the initiative to bring some of the documentation in files and things that he created with him to the interview."

25.    Chief Lanham was present for the deliberation following the interviews and knew that the documents submitted by J.P. had impressed Mr. Rabenold and Ms. Frye.

26.     Chief Lanham did not "see any need to" share his opinions with the other panel members, "because that may have prejudiced their opinion."Panel members Rabenold and Frye were impressed by J.P.'s handouts.

27.     J.P. was qualified for the ESS-3 position.

28.     The panel recommended J.P. for the position and he was promoted to ESS3, not Marlene Luzier.

29.     Lanham noted within his final overall review in Luzier's interview that "although the interview was not the best…Malene Luzier would be second choice at this point."

30.     Luzier alleges that she was qualified for the position because she had been in the next lower class down from the ESS3 position for a couple of years and she felt that she had been doing the job of the ESS3 since January, 2005.

31.     Luzier was never classified by L&I as an ESS3 nor did she receive out of class pay during the time she claims she was performing the ESS3 position.

32.     During the relevant time period, Lanham supervised ten women: one clerk typist 3, two clerk typist 2, and three Employment Security Specialist 2, including Marlene Luzier.  Besides the ESS3 position Luzier interviewed for, Lanham has only had opportunity to hire one other supervisor and there were no

female candidates for the position.  Lanham inherited all other supervisor positions in the reorganization of the Bureau.

33.    In September 2005, Luzier filed another verbal complaint with the Equal Opportunity Office because Billy Lanham assigned her to perform audits for what she thought would have been two months but turned out to be over one year.

34.    Luzier alleges that the following day, Jim Paisley told her that she didn't have to do the audits anymore.

35.    On September 23, 2005 Luzier went to see Dr. Mueller and was diagnosed with depression and could not return to work.

36.    Plaintiff had not had occasion to see a doctor in the ten years prior to September 2005.

37.    Mr. Lanham supervised Mr. Lindke for approximately six (6) years.

38.    Only three employees were assigned to the Welfare Unit; two ESS-2's and an ESS-3.  A clerical employee was shared by the Welfare and Veterans' units.

39.    During the relevant time, one of the ESS-2 positions was vacant, and the other was held by Mrs. Luzier.

40.    The ESS-3 position requires planning, budgeting, policy-making and on-site review, but there is no evidence in the record that any of those duties were needed or performed by anyone between December 2004 and March 2005.

41.     Between December 2004, and March 2005, Ms. Luzier was the only non-clerical employee of the Welfare Unit.

42.     Director Vogel was the chief executive administrator for the Bureau of Workforce Development Partnership and supervised hundreds of employees including all of those employees located at all of the Career Link sites throughout the Commonwealth.

**D.    DESCRIPTION OF DAMAGES**

Plaintiff seeks compensatory damages and punitive damages for her alleged pain and suffering.  Defendant denies that plaintiff is entitled to any damages.

**E.    NAMES AND ADDRESSES OF WITNESSES**

Defendant anticipates calling as witnesses the following individuals:

1.     John Vogel
       3869 N. Sarayo Circle
       Harrisburg, PA 17110

2.     James Rabenold
       Department of Labor & Industry
       Bureau of Workforce Development Partnership
       12th Floor, West, L&I Building
       7th & Forster Streets
       Harrisburg, PA 17120

3.     Gina Frye
       Department of Labor & Industry
       Bureau of Workforce Development Partnership
       13th Floor, West, L&I Building
       7th & Forster Streets
       Harrisburg, PA 17120

4.    Billy Lanham (retired)
      421 D Street
      Carlisle, PA 17013

5.    James Paisley
      Department of Labor & Industry
      Bureau of Workforce Development Partnership
      13th Floor, West, L&I Building
      7th & Forster Streets
      Harrisburg, PA 17120

      Western Region Office (temporary office)
      300 Liberty Avenue, Room 1307
      Pittsburgh, PA 15222

6.    Plaintiff

## F.    SUMMARY OF TESTIMONY OF EXPERT WITNESS

Defendant does not intend to call any expert witnesses at trial.

## G.    SPECIAL COMMENTS ABOUT PLEADINGS and DISCOVERY

None.

## H.    SUMMARY OF LEGAL ISSUES INVOLVED AND LEGAL AUTHORITIES RELIED UPON.

**Title VII Gender Discrimination**

In order to establish a claim of gender discrimination under Title VII of the Civil Rights Acts of 1964 and 1991 ("Title VII") plaintiff must prove that (1) that she is a member of the protected class, (2) is qualified for the position, (3) that she suffered an adverse employment action, and (4) that, an otherwise similarly situated person outside the protected class received more favorable treatment.

*Jones v. School Dist. of Philadelphia*, 198 F.3d, 403, 411 (3d Cir. 1999).  If the

Plaintiff demonstrates a prima facie case, then Defendant must offer a legitimate

non-discriminatory reason for their employment action.  If Defendant is successful

at doing so, the burden shifts back to Plaintiff to show that the reasons proffered by

the defendant were pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).

**Sexually Hostile Work Environment-Constructive Discharge**

To prevail on a claim of hostile-environment constructive discharge the

Plaintiff must demonstrate the following elements:

> (1) she suffered intentional discrimination because of her gender, (2) the
> discrimination was pervasive and regular, (3) the discrimination
> detrimentally affected her, (4) the discrimination would detrimentally affect
> a reasonable person of the same gender in that position, and (5) the existence
> of *respondeat superior* liability.

*Pittman*, 868 F.Supp. at 108, citing *Andrews v. City of Philadelphia*, 895 F.2d

1469, 1482 (3d Cir.1990).

**I.    STIPULATIONS DESIRED**

The Department of Labor and Industry would like a stipulation as to the

authenticity of its exhibits and that copies may be accepted in lieu of originals.

**J.    ESTIMATED NUMBER OF TRIAL DAYS**

Three to five days.

**K.**     **OTHER MATTERS**

None.

**L.**     **EXHIBIT LIST**

Attached and marked as **ATTACHMENT A**.

**M.**     **SPECIAL VERDICT QUESTIONS**

Attached and marked as **ATTACHMENT B**.

**N.**     **STATEMENT REGARDING LOCAL RULE 16.2**

The Commonwealth of Pennsylvania Department of Labor & Industry has full settlement authority in this case and is aware of the provisions of Local Rule 16.2. The appropriate individuals within the L&I will be available by telephone during the pre-trial conference.

**O.**     **CERTIFICATE RE: DEPOSITIONS AND VIDEOTAPES**

At this point, defendants do not intend to use any deposition transcripts or videotapes other than, potentially, for impeachment, and plaintiff has not informed the defendant of an intention to use transcripts or videotapes other than for impeachment.

**P.**     **NON-JURY TRIAL**

Not applicable.

                              **Respectfully submitted,**

                              **THOMAS W. CORBETT, JR.**
                              **Attorney General**

By:  *s/ M. Abbegael Giunta*
         **M. ABBEGAEL GIUNTA**

**Office of Attorney General**    **Deputy Attorney General**
**15th Floor, Strawberry Square**    **Attorney ID 94059**
**Harrisburg, PA 17120**
**Phone: (717) 787-1179**
**Fax:    (717) 772-4526**    **SUSAN J. FORNEY**
**mpacuska@attorneygeneral.gov**    **Chief Deputy Attorney General**
    **Chief, Civil Litigation Section**
**Date:  October 1, 2008**
    **Counsel for Defendant**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARLENE M. LUZIER,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:06-CV-1590** |
| **v.** | : | |
| | : | **(Judge Munley)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF LABOR AND INDUSTRY,** | : | **Electronically Filed Document** |
| | : | |
| **Defendant.** | : | |

<u>**CERTIFICATE OF SERVICE**</u>

I, M. Abbegael Giunta, Deputy Attorney General for the Commonwealth of

Pennsylvania, Office of Attorney General, hereby certify that on October 1, 2008, I

caused to be served a true and correct copy of the foregoing document titled

Defendant's Pretrial Memorandum via electronic filing to the following:

**Elliot A. Strokoff, Esquire
Jennifer A. Nachamkin, Esquire
Strokoff & Cowden, PC
132 State Street
P.O. Box 11903
Harrisburg, PA  17108-1903
eas@strokoffandcowden.com
jan@strokoffandcowden.com**


 *s/ M. Abbegael Giunta*
**M. ABBEGAEL GIUNTA**
Deputy Attorney General